UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO GOLF PARTNERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TIMBERSTONE MANAGEMENT LLC, AND LAURA TENNISON, <br><br> Defendants. | Case No. 1:14-cv-00233-BLW <br><br> MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Defendants TimberStone Management LLC's and Laura Tennison's Motions to Set Aside Clerk's Entry of Default (Dkts. 21, 22). Having considered the record and pleadings, the Court will grant these motions and set aside the Clerk's entry of default. The Court will also deny Plaintiff Idaho Golf Partner, Inc.'s Motion for Default Judgment (Dkt. 11).

## BACKGROUND

Plaintiff Idaho Golf Partners, Inc. commenced this action on June 13, 2014. A few days later, Idaho Golf's counsel emailed a copy of this complaint to defendant Laura

Tennison, indicating that the complaint had "sent . . . out for service . . . in hopes we can resolve this matter short of protracted litigation." *June 17, 2014 email from Dinius to Tennison,* Dkt. 23-2. Defendant TimberStone was not named as a defendant in this complaint; instead Idaho Golf named Peninsula Beverage Co. and Laura Tennison as defendants. *See* Dkt. 1.

Roughly one month later, Idaho Golf filed an amended complaint, dropping Peninsula Beverage as a defendant and adding in its place defendant TimberStone. On July 21, 2014, a process server delivered copies of the amended complaint and summons to the law offices of Webster Powell, P.C. *See Affidavits of Service,* Dkts. 9-2, 9-3. Defendant Tennison was employed by Webster Powell at the time and attorney James L. Webster – presumably of Webster Powell – was listed as defendant TimberStone's registered agent. *See Decl. of Kevin E. Dinius*, at Ex. D, Dkt. 23-5.

The process server left copies of the summons and complaint with Mr. Louie Salas, who was working as a temporary administrative assistant at Webster Powell. *See Def. TimberStone's Br*. at 4, Dkt. 21-4. As discussed further below, the parties dispute whether leaving the documents with Mr. Salas effected service upon the defendants.

On August 13, 2014, the Court Clerk entered both defendants' default, and Idaho Golf thereafter moved for entry of a default judgment. *See* Dkts. 10, 11. Within days of this motion being filed, Tennison and TimberStone entered their appearances. *See* Dkts. 12, 14. The parties then stipulated that the Court should refrain from ruling on the

motion for entry of a default judgment while they attempted to resolve their differences. *See* Dkt. 18. The Court granted that stipulation. *See* Dkt. 19.

Meanwhile, back in Illinois, TimberStone had sued Idaho Golf in the United States District Court for the Northern District of Illinois. TimberStone filed the Illinois action on July 18, 2014 – three days before copies of the amended Idaho complaint were delivered to Mr. Salas. Additionally, around that same time, Idaho Golf filed a cancellation proceeding against TimberStone in the United States Patent and Trademark Office (USPTO). *See Pl. Resp.* at 3, Dkt. 23. The Illinois case was dismissed in November 2014 for lack of jurisdiction. *Pl. Resp.* at 4, Dkt. 23. The USPTO proceeding has been stayed pending the disposition of this action.

## ANALYSIS

Federal Rule of Civil Procedure 55(c) empowers a court to set aside an entry of default for "good cause." Fed. R. Civ. P. 55(c). To determine whether good cause exists, the Court considers three factors: 1) whether the defendant's culpable conduct led to the default; 2) whether the defendant has a meritorious defense; or 3) whether setting aside the default would prejudice the plaintiff. *Brandt v. Am. Bankers Ins. Co. of Fla.,* 653 F.3d 1108, 1111 (9th Cir. 2011). The movant bears the burden of demonstrating these factors, but the burden is "not extraordinarily heavy." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). The Ninth Circuit has found that it is "crucial" for courts to remember that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible,

be decided on the merits." *Id.* (*citing Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). Further, although the same test applies to a motion seeking relief from the entry of default under Rule 55(c) and default judgment under Rule 60(b), the test is more liberally applied in the Rule 55(c) context because "there is no interest in the finality of judgment with which to contend." *Id.* at 1091 n.1.

1. **Effective Service of Process**

Before addressing good cause under the three-part described above, the Court will address the parties' threshold dispute regarding service of process. An entry of default presumes effective service of process; as a result, if neither defendant was effectively served, then this alone justifies setting aside the default. *See, e.g, Veeck v. Commodity Enters.,* 487 F.2d 423, 425-26 (9th Cir. 1973) (reversing district court's denial of motion to set aside default judgment and quash service of process because service of process was ineffective and citing Rule 55(c) in so doing); *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir.1985) ("A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside."); *Mettle v. First Union Nat'l Bank,* 279 F. Supp. 2d 598, 603 (D.N.J. 2003) (finding good cause to set aside the entry of default given improper service of process).

In determining whether service was effective, the Court looks to Rule 4 of the Federal Rules of Civil Procedure. *See Direct Mail Specialists v. Eclat,* 840 F.2d 685, 688 (9th Cir. 1988). "'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.'" *Id.* (citation omitted). But if a party

has not substantially complied with Rule 4, "'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction." *Id.* (citation omitted). A plaintiff bears the burden of demonstrating proper service. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

***Tennison.*** Turning first to individual defendant Laura Tennison, plaintiff could have effected service under Rule 4 in one of two ways. First, plaintiff could have followed either Idaho or Illinois state law for effecting service. Second, plaintiff could have effected service by

    (A)    personally delivering a copy of the summons and of the complaint to Tennison;

    (B)    leaving a copy of each at Tennison's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

    (C)    delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. Proc. 4(e)(2).

Plaintiff did not satisfy any of these alternatives. First, plaintiff has not argued that it properly effected service under state law. Second, plaintiff did not satisfy any of the other three alternatives: The process server did not personally deliver the documents to Ms. Tennison. He did not leave the documents at Ms. Tennison's "dwelling or usual place of abode." And there has been no showing that Ms. Tennison authorized a temporary employee at her law firm to accept service on her behalf. The Court thus concludes that plaintiff failed to effect service on Ms. Tennison.

*TimberStone.* The Court is unable to determine whether plaintiff adequately served defendant TimberStone based on the current factual record.

To effect service on TimberStone, plaintiff must comply with Rule 4(h)(1), which sets out the rules for serving partnerships, corporations, and associations. Rule 4(h) allows two methods of service. The first allows service to be effectuated in the manner prescribed by Rule 4(e)(1) for serving an individual. Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1), in turn, states that an individual may be served with process in accordance with the law of the state in which the district court is located or in which service is effectuated. Plaintiff makes no argument that it effected service on TimberStone under this method.

The second method under Rule 4(h)(1) allows service to be effected by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant." *Id.* 4(h)(1)(B). In the Ninth Circuit, "service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process." *Direct Mail*, 840 F.2d at 688. Service may be made "'upon a representative so integrated with the organization that he will know what to do with the papers.'" *Id.* (citation omitted). Thus, service on an individual who holds a position that indicates authority within the organization generally is sufficient. *Id.*

The determination of whether an individual holds sufficient authority in an organization is largely factual. *Id.* In *Direct Mail Specialists v. Eclat Computerized*

*Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988), the plaintiff served the receptionist of a small company on its first attempt at service. *Id.* at 687. The receptionist was the only employee in the office when the process server arrived. *Id.* The process server asked the receptionist who was authorized to accept service on behalf of the company and was told that no one was available. *Id.* The process server then served the receptionist and instructed her to give the documents to her superiors. *Id.* After serving the receptionist, the process server mailed the documents to the company at the address served. *Id.* The *Direct Mail* Court found that the size of the company and the fact that the receptionist was the only individual available indicated that the receptionist played a large role in the structure of the company and had more than minimal responsibility. *Id.* at 688-89. In addition the court found evidence of actual receipt, because a leader of the company complained about service the day after it was made. *Id.* at 689.

In this case, plaintiff says temporary employee Louie Salas was an "authorized agent" to accept service on behalf of James Webster, who, in turn, was the authorized agent for defendant TimberStone. The problem with plaintiff's argument is that the Court does not have sufficient facts to decide whether Mr. Salas had sufficient authority to accept service on TimberStone's behalf. The Court does not know what tasks Mr. Salas was entrusted with. Nor does the Court know the details of the conversations, if any, that took place between the process server and Mr. Salas. Further, the Court does not have specific facts regarding when and how TimberStone received notice of the complaint. Defendants have submitted a declaration indicating only that "at some point

after July 21, 2014 [the date Mr. Salas received the documents], Webster Powell P.C. notified TimberStone . . . regarding receipt of the Amended Complaint." *Powell Dec.*, Dkt. 21-3, ¶ 7.

As for the extent of Mr. Salas's authority, plaintiff does not offer any evidence supporting its assertion that Mr. Salas was an "authorized person." *See Opp.*, Dkt. 23, at 7. Instead, plaintiff faults defendants for not coming forward with evidence. *See id.* at 8 ("Defendants have not submitted any information or evidence from Mr. Salas that the foregoing [i.e., that Mr. Salas is an "authorized person"] is inaccurate or untrue."). As noted earlier, however, plaintiff has the burden of demonstrating proper service.

Based on this incomplete factual record, the Court cannot determine whether plaintiff properly effected service on TimberStone. But even assuming TimberStone has been properly served, the Court has nonetheless determined that it is appropriate to set aside the Clerk's entry of default because TimberStone has satisfied the three-part test described above.

2. **Culpable Conduct**

The first factor in this three-part test is culpable conduct. There are to two lines of cases within the Ninth Circuit cases dealing with culpable conduct. Under the first line of cases, a defendant's conduct will be seen as culpable if "he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis added). The concept of "intentionally" in this context does not simply refer to a conscious choice

not to answer the complaint; rather it refers to conduct that is willful, deliberate, or that evidences bad faith. *Id*. This sort of conduct will typically involve an intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process. *See id.*

The second line of cases is more stringent. These cases suggest that if a defendant received actual or constructive notice of an action and then fails to answer, *this failure alone* evidences culpability. *See Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.,* 375 F.3d 922, 926 (9th Cir. 2004). But this standard typically has been reserved for legally sophisticated individual or entities. Further, the Ninth Circuit has cautioned that this standard may not be consistent with the Supreme Court's approach in *Pioneer Investment Services Co. v. Brunswick Associates, Ltd.*, 507 U.S. 380 (1993). *See Mesle*, 615 F.3d at 1091. Ultimately, then, this Court retains the discretion (but not the obligation) to infer intentionality from the actions of a legally sophisticated party and to thereby find culpability. *See Garner v. Wells Fargo Home Mortg., Inc.*, No. 1:10-CV-266-BLW, 2011 WL 2413841, at *2 (D. Idaho June 9, 2011).

In keeping with the policy to decide cases on their merits, and as explained further below, the Court declines to assume that either defendant engaged in culpable conduct based on their failure to timely respond to the complaint.

Individual defendant Laura Tennison provided facts to support her claim that she was working to recover from an absence due to the unexpected death of her father and that she promptly engaged counsel and entered an appearance just nine days after her

response to the amended complaint would have been due. *See Def. Tennison's Response Br.,* Dkt. 22-1, at 5-6.

Defendant TimberStone says it failed to timely respond to the amended complaint because it was in the midst of preparing the Illinois action, which was filed three days before plaintiff's process server delivered copies of the complaint to Mr. Salas. Further, after learning of the default, TimberStone promptly retained Idaho counsel and entered an appearance.

In view of these facts, the Court finds that both Tennison's and TimberStone's failure to timely respond to the complaint resulted from mere negligence or inadvertence, rather than an attempt to manipulate the legal process or take advantage of the plaintiff.

The Court is not persuaded by plaintiff's arguments that TimberStone should be found culpable based on alleged forum shopping and "interference" with Idaho Golf's social media accounts.

The forum-shopping argument is unavailing because the only supporting evidence offered is the fact that TimberStone filed an action in Illinois, and that that action was ultimately dismissed for lack of personal jurisdiction. This evidence, without more, is insufficient to demonstrate culpable conduct. *Cf. Temple v. Guardsmark LLC*, No. C 09-02124 SI, 2009 WL 2997396, at *3 (N.D. Cal. Sept. 16, 2009) (declining to find forum-shopping where the plaintiff chose a forum that was nearby, even though it was outside the district in which he resided).

Likewise, Idaho Golf's insistence that defendants were "interfering" with their social media accounts does not convince the Court that TimberStone was engaging in "culpable conduct." Among other things, to resolve this argument, the Court would need to examine the merits of the case and resolve this particular issue in plaintiff's favor.

In sum, the Court finds that neither defendant engaged in culpable conduct.

### 3. Meritorious Defense

Defendants have also satisfied the meritorious-defense factor, as they have "present[ed] specific facts that would constitute a defense." *TCI*, 244 F.3d at 700. This burden is "not extraordinarily heavy" when seeking to vacate a default judgment, and even less so when seeking to set aside a default. *Mesle,* 615 F.3d at 1091 n.1. Further, the Court does not need to decide the truthfulness of the defendants' allegations in order to set aside a default. *TCI,* 244 F.3d at 700.

TimberStone has alleged various plausible meritorious defenses. Among other defenses, TimberStone alleges that plaintiff's declaratory relief claim should fail because TimberStone's federally registered marks are superior to plaintiff's. More specifically, TimberStone alleges that it has used the TIMBERSTONE mark continuously since June 1, 1997. *See Def. TimberStone's Br.* at Ex. A, ¶¶ 20, 29, Dkt. 21-5. Although the parties may disagree as to the merits of TimberStone's various defenses, TimberStone has stated facts sufficient to constitute a defense. Accordingly, this factor supports setting aside the entry of default.

Defendant Tennison has also presented several plausible defenses. *See Def. Tennison's Brief* at 7-8, Dkt. 22-1. Among other things, defendant Tennison raises defenses based on lack of personal jurisdiction and privilege under Section 586 of the Restatement (Second) of Torts. Idaho Golf's reply brief fails to meaningfully address many of the defenses raised in Tennison's motion. The Court thus concludes that Tennison has satisfied the meritorious-defense factor.

### 4. Prejudice to the Plaintiff

Finally, the defendants have satisfied the third factor of the good-cause analysis. This factor requires the Court to ask whether setting aside the default would prejudice the plaintiff by hindering its ability to pursue its claim. *Falk*, 739 F.2d at 463. Such prejudice requires more than a simple delay in the resolution of the case or "being forced to litigate on the merits." *TCI*, 244 F.3d at 701.

The Court concludes that setting aside the default will not hinder plaintiff's ability to pursue its claims against either defendant. First, a default judgment has not been entered in this case, meaning that Idaho Golf would be required to proceed to hearing to establish the elements of its claims and damages before obtaining default judgment. Additionally, plaintiff stipulated to some delay in this matter so that the parties could attempt to work out their differences. Finally, the Court is not persuaded by plaintiff's arguments that it will be prejudiced because it has been forced to (1) litigate on multiple fronts, and (2) endure defendant TimberStone's alleged continued interference with its social media accounts. The multiple-fronts argument is moot, as the Illinois action has

been dismissed.  Further, TimberStone filed the Illinois action before plaintiff even attempted to serve defendants with the Idaho complaint.  And the social-media argument is well off the mark; it deals with the merits – not prejudice that would be occasioned by defendants' failure to timely respond to the complaint.

## CONCLUSION

In light of the "good cause" factors discussed above, the Court concludes that it is proper to set aside the Clerk's entry of default.  In reaching this conclusion, the Court is guided by the Ninth Circuit's "oft-stated commitment to deciding cases on the merits whenever possible."  *Mesle*, 615 F.3d at 1091.

## ORDER

**IT IS ORDERED:**

1. Defendant TimberStone Management LLC's Motion to Set Aside Entry of Default and Accept Answer and Counterclaim (Dkt. 21) is **GRANTED**.

2. Defendant Laura Tennison's Motion to Set Aside Default (Dkt. 22) is **GRANTED**.

3. The Clerk's Entry of Default (Dkt. 10) is **VACATED.**

4. Idaho Golf Partners, Inc.'s Motion for Default Judgment (Dkt. 11) is **DENIED.**

5. Within five day of this Order, Defendant TimberStone is directed to separately file its Answer and Counterclaim in this matter.  *See* Dkt. 21-5 through 21-8.

6. Defendant Tennison is required to respond to Plaintiff's Amended Complaint (Dkt. 5) within 21 days from the entry of this Order.

DATED: March 31, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court