UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO GOLF PARTNERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TIMBERSTONE MANAGEMENT, LLC., <br><br> Defendant. <br><br>――― <br><br> TIMBERSTONE MANAGEMENT, LLC., <br><br> Counterclaimant, <br><br> v. <br><br> IDAHO GOLF PARTNERS, INC., <br><br> Counterdefendant. | Case No. 1:14-cv-00233-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court are Plaintiff/Counterdefendant's motion in limine (Dkt. 62) and three motions in limine filed by Defendant/Counterclaimant (Dkts. 67, 68, 73-1). The motions are fully briefed and at issue. For the reasons expressed below, the Court will grant in part and deny in part the motions.

**MEMORANDUM DECISION AND ORDER - 1**

## ANALYSIS

**1. Plaintiff's Motion in Limine (Dkt. 62)**

Plaintiff's motion seeks to preclude Defendant from introducing evidence or testimony at trial referencing: (1) telephone calls from anonymous persons to TimberStone Golf Course, as inadmissible hearsay, and (2) settlement offers or statements made during settlement discussions or mediation proceedings. On September 19, 2016, the court issued an Order (Dkt. 97) granting in part and denying in part plaintiff's motion as to request (1). The Court takes up the remaining request here.

### A. *Settlement and Mediation Discussions*

Plaintiff seeks to exclude any testimony or evidence regarding settlement offers or statements made during settlement discussions or mediation proceedings, pursuant to Federal Rule of Evidence 408. *See Pl. Brief* at 3, Dkt. 62.[1] Defendant opposes the motion, asserting that it has no intention of relying on such evidence for a purpose prohibited under Rule 408 but may seek to rely on the evidence "for another purpose, such as proving a witness's bias or prejudice [and/or] negating a contention of undue delay . . . ." *See Def. Resp.* at 6, Dkt. 83 (quoting Fed. R. Evid. 408(b)).

Rule 408 generally prohibits the introduction of evidence relating to offers of compromise and statements made during the course of settlement negotiations to "prove

---

[1] Plaintiff also cites to Federal Rule of Civil Procedure 68. Defendant contends, and Plaintiff does not deny, that no offer of judgment has been made in this case. Therefore, Rule 68 does not apply. Fed. R. Civ. P. 68.

or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). However, Rule 408 is not an absolute ban on evidence regarding settlement negotiations.

It is presently unknown what testimony or evidence pertaining to settlement offers or negotiations the parties may seek to introduce, and for what purpose. Therefore, the Court declines at this stage to place a blanket prohibition on this category of evidence. Defendant's motion is DENIED, without prejudice to a timely objection to the presentation of such evidence at trial. However, Plaintiff's counsel is directed to raise the issue with the Court outside the presence of the jury before attempting to offer evidence concerning prior settlement discussions.

2. **Defendant's Motions in Limine**

A. *References to Prior or Pending Litigation (Dkt. 67)*

Defendant asks the court to preclude Plaintiff from offering any testimony or evidence, or making any other reference before the jury, regarding prior or pending litigation between the parties. *Def. Brief* at 1–2, Dkt. 67-1. Relying on Federal Rules of Evidence 401, 402, and 403, Defendant explains that such evidence has no probative value and presents a substantial risk of unfair prejudice, confusing the issues, and misleading the jury. *Def. Brief* at 5–8, Dkt. 67-1.

The parties refer specifically to three prior or pending proceedings. The first, the "Cancellation Proceeding," is the petition for cancellation of Defendant's federally registered trademark filed by Plaintiff on or about July 8, 2014 with the United States

Patent and Trademark Office ("USPTO"). *Watkins Aff.* Ex. E, Dkt. 67-7. The Cancellation Proceeding has been stayed until this case reaches a final disposition, and the USPTO has yet to rule on any substantive issues. *Watkins Supp. Aff. in Support of Def.'s Mot. for Summ. J.* Ex. 1, Dkt. 49-1. The second proceeding, the "Illinois Action," is the trademark infringement lawsuit filed by Defendant on July 18, 2014 in the U.S. District Court for the Northern District of Illinois. *Watkins Aff.* Ex. C, Dkt. 67-5. This case was dismissed on November 6, 2014 for lack of personal jurisdiction and did not reach the merits at issue. *Watkins Aff.* Ex. D, Dkt. 67-6. The third, the "Clerk's Default," is the Clerk's Entry of Default filed in this case on August 13, 2014 (Dkt. 10), which the court later set aside on March 31, 2015 (Dkt. 26).

### (1) Illinois Action and Clerk's Default

Plaintiff states in its response to the motion in limine that it "has no intention of mentioning [the Illinois Action and Clerk's Default] in its case in chief, though respectfully reserves the right to do so if raised by Defendant during the trial." *Pl. Resp.* at 4, Dkt. 82. Based on this representation, the Court will GRANT the motion as to the Illinois Action and Clerk's Default, but on the condition that Defendant not present any evidence or testimony, or make any comment before the jury, regarding these prior proceedings at any point during this trial.

### (2) Cancellation Proceeding

The parties disagree on the admissibility of evidence regarding the pending Cancellation Proceeding.

Defendant argues that such evidence is irrelevant under Rule 402, as it has no "tendency to make any consequential fact at issue in this litigation any more or less probable. . . . The Cancellation Proceeding says nothing about the validity of [Defendant's marks]." *Def. Brief* at 5, Dkt. 67-1. Defendant further contends that any references to the Cancellation Proceeding should be excluded under Rule 403 as unduly prejudicial, arguing that "the jury will ascribe weight to notions of 'cancellation,'. . . and may unevenly decide matters in [Plaintiff's] favor once the jury hears that some other adjudicative body has looked into the issue." *Def. Brief* at 9, Dkt. 67-1.

Plaintiffs counters by arguing that evidence of the Cancellation Proceeding is (1) relevant to the alleged invalidity of Defendant's federal trademark registration; (2) relevant to the *Sleekcraft* "strength of the mark" factor; (3) and necessary for establishing a timeline of events essential to both parties' theories of the case.

The Court disagrees that the Cancellation Petition is probative of the validity of Defendant's federal trademark registration. The mere fact that Plaintiff has filed a petition does not "have any tendency to make [it] more or less probable" that Defendant's mark is invalid. Fed. R. Evid. 401(a). A decision from the USPTO granting or denying Plaintiff's petition could be relevant to the validity of Defendant's federal trademark registration and presumptive ownership of the mark. However, the Cancellation Petition has been stayed pending the outcome in the present action, thus the Board will not rule on any substantive issues prior to the resolution of this case. Finally, any grounds for cancellation alleged in the petition can and have been raised again in the present action.

**MEMORANDUM DECISION AND ORDER - 5**

The Court also fails to see the relevance of the Cancellation Petition as to the strength of the mark analysis.² A trademark's strength is generally measured by its distinctiveness, or the degree to which it is "remembered and associated in the public mind with the mark's owner." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). A pending petition with the USPTO has no obvious bearing on the strength of Plaintiff's mark, either inherently or in the marketplace. Plaintiff's brief offers no supporting authority or analysis to the contrary.

Likewise, any relevance stemming from the timing of the Cancellation Petition is minimal, at best. Plaintiff argues that "the timing of Defendant's application for registration and the contents thereof is relevant to the jury's ability to apply the facts to the law as instructed by the Court." *Pl's Resp.* at 3, Dkt. 82. This appears to confuse the subject of this motion, which is evidence of the Cancellation Proceeding, not evidence of Defendant's registration application. Plaintiff offers a laundry list of events generally relevant to this action but no argument as to how the timing of Petition for Cancellation may be relevant to such dates.³ The Court agrees that evidence that Plaintiff initiated a

---

² Plaintiff states that "evidence concerning the USPTO proceedings is probative of the relative strength or weakness of *Plaintiff's* mark." *Pl's Resp.* at 4, Dkt. 82. (emphasis added). Defendant points out, and the Court wishes to clarify, that the jury will be asked to evaluate the strength of *Defendant's* mark.

³ Plaintiff's list includes the following:

> [W]hen the parties began using the term Timberstone, when the application for trademark registration was filed, . . . the length of time and manner of the use of the claimed trademark as it relates to the secondary meaning, whether there was continuous prior use within a remote geographic area, and to what extent a party engaged in exclusive use of the mark . . .

*Brief* at 4, Dkt. 82.

**MEMORANDUM DECISION AND ORDER - 6**

cancellation proceeding may aid the jury's understanding of the overall timeline of this dispute. However, without more, any such value is substantially outweighed by the danger of undue prejudice, confusing the issues, and undue delay, as noted below.

Rule 403 provides further justification for exclusion. There is a substantial risk that the jury will ascribe undue weight to the notion that the USPTO has investigated this issue. Furthermore, the jury may wrongly infer that the proceeding signals that USPTO itself questions the mark's validity. Allowing Plaintiff to refer to the Cancellation Proceeding would require an explanation of the nature of cancellation proceedings, what a "stay" means, what legal standards apply, and how a Cancellation Proceeding might interact with the present action. Such evidence is likely to confuse the jury and needlessly complicate trial.

The Court concludes that references to the Cancellation Petition would be irrelevant and otherwise outweighed by a danger of unfair prejudice, misleading the jury, and undue delay. Thus, Defendant's request is also GRANTED as to the Cancellation Petition, including but not limited to Plaintiff's Exhibit 1021 (the Petition for Cancellation).

### B. *Proximity* Sleekcraft *Factor (Dkt. 68)*

Defendant next asks the court to prevent Plaintiff from introducing testimony, evidence, or any argument before the jury concerning the legal significance of the distance separating the two golf courses to the *Sleekcraft* "likelihood-of-confusion" analysis. Relying on Federal Rules of Evidence 401, 402, and 403, Defendant suggests

that the distance between the two courses is irrelevant, because the *Sleekcraft* factors do not deal with geographic proximity, and that any probative value of geographic proximity evidence is substantially outweighed by a danger of undue prejudice, the potential to confuse the issues, and the risk of misleading the jury. Additionally, relying on Rules 701 and 702, Defendant argues that testimony asserting that geographic distance lessens the likelihood of consumer confusion goes to the legal standard underlying the ultimate issue at trial and should be reserved for the jury.[4]

### (1)  Relevance and Rule 403 Balancing

To prevail on its Lanham Act claims, 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), Defendant must prove that Plaintiff's "use of its mark is likely to cause consumer confusion." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). To analyze the "likelihood of confusion," courts within the Ninth Circuit apply an eight-factor test introduced in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979). The *Sleekcraft* factors include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of

---

[4] Defendant's motion in limine appears limited to arguments about geographic proximity in the context of the "likelihood-of-confusion" inquiry of a Lanham Act claim. Defendant stipulates that it does not object, for example, to mention of the location of the two courses in the context of discussing "fame" under trademark dilution or to restrict passing mentions of the two golf courses' geographical locations. . *Def. Reply Brief* at 8, Dkt. 86. Thus, the Court does not rule at this time on the admissibility of geographic evidence with regard to other claims or defenses in this case.

the product lines. *Id.*

The *Sleekcraft* factors are "not exhaustive." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153 (9th Cir. 2011) (quoting *Sleekcraft*, 599 F.2d at 348 n. 11). The Ninth Circuit has observed that other factors may be taken into account and has counseled against applying the test mechanically. *See, e.g.*, *Network Automation*, 638 F.3d at 1145 ("[o]ther variables may come into play depending on the particular facts presented"); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1030 (9th Cir. 2010) ("This eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts."). Ultimately, the inquiry must focus on the factual question of whether consumers are likely to be confused.

Keeping in mind this flexible approach, the Court finds that geographic proximity is an appropriate consideration in the likelihood-of-confusion analysis, even though it is not an established factor in the *Sleekcraft* test. Common sense suggests that use of a mark in two distinct and geographically separate markets may reduce the overlapping client base that creates a potential for confusion. Furthermore, geographic proximity is relevant to the analysis under established *Sleekcraft* factors. For example, geography is pertinent to the "strength of the mark" factor, in that a mark's strength may dissipate with distance.

Defendant observes that geographic proximity is not a factor expressly considered in most Ninth Circuit decisions analyzing trademark infringement. However, Defendant cites no authority for the proposition that geographic proximity should be excluded from

**MEMORANDUM DECISION AND ORDER - 9**

this analysis altogether. Furthermore, other courts recognize that geographic proximity is relevant to consumer confusion. The Second Circuit recently found that in the "absence of actual confusion or bad faith, substantial geographic separation remains a significant indicator that the likelihood of confusion is slight." *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125 (2d Cir. 2004). While the court applied a facially different test, the ultimate inquiry was the same: whether consumers were likely to be confused.

Defendant's argument about the Ninth Circuit model jury instructions is equally unpersuasive. While the model instructions do not expressly require consideration of the distance between two companies, *Def. Brief* at 5, Dkt. 68-1, they emphasize that "all relevant evidence" must be considered and even include a factor "[9. Other Factors. Any other factors that bear on likelihood of confusion.]." Ninth Circuit Model Jury Instruction No. 15.16.

On balance, the Court finds that testimony about geographic proximity is relevant and will not create a substantial risk of unfair prejudice, confusing the issues, or misleading the jury. The Court trusts that the jury will be able to properly weigh the significance, if any, of the geographic distance between the two golf courses. And, Defendant remains free to present evidence that golf courses, even ones separated by large distances, do compete for the same customers through national press and online marketing.

To the extent necessary, Plaintiff will be precluded from arguing that "geographic

proximity" is one of the enumerated *Sleekcraft* factors. Plaintiff's motion to exclude any evidence of geographic proximity as it relates to the issue of "consumer confusion" is otherwise DENIED.

### (2) Lay Opinion Testimony under Rule 701

Defendant also seeks to preclude Plaintiff from eliciting—and counsel from stating—speculative, non-expert testimony at trial on whether a golfer would likely to be confused given the distances involved. *Def. Brief* at 8, Dkt. 68-1. Defendant argues that such testimony goes to the legal standard underlying the ultimate issue at trial and should be reserved for the jury, adding that such testimony "veers into expert witness territory." *Id.* at 9.

Opinion testimony from a lay witness must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "Lay opinion testimony is not inadmissible solely because it addresses the ultimate issue in the case." *See* 4-701 Weinstein's Federal Evidence § 701.05 (collecting cases); *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) ("A lay witness may testify as to an ultimate issue of fact, so long as the testimony is otherwise admissible."). However, lay witnesses may not testify as to the applicable legal standards or tests. *See Id.*

The admissibility of lay opinion testimony of the type described by Plaintiff must be decided under the particular facts and circumstances. An opinion grounded in a

witness's unique experience that offers a perspective not otherwise available to the jury may be helpful and admissible. On the contrary, lay opinion on the ultimate issue of consumer confusion offered without supporting factual details would fail on the "helpfulness" requirement. Fed. R. Evid. 701(b). In other words, if the jury's opinion is as good as the witness', the opinion likely will be deemed unhelpful and inadmissible. *See generally* 4-701 Weinstein's Federal Evidence § 701.05 ("Courts may properly be wary . . . of admitting lay opinion testimony when its sole function is to answer the same question that the trier of fact is to consider in its deliberations."). Furthermore, such testimony must be based on a proper foundation and "rationally based on the witness's perception." Fed. R. Evid. 701(a).

For these reasons, plaintiff's motion to exclude any non-expert testimony at trial on whether a golfer would likely to be confused given the distances involved is DENIED, without prejudice to timely objections to lay opinion evidence offered during the course of the trial.

### C. *Initial Interest Confusion (Dkt. 73-1)*

Finally, Defendant asks the court to preclude Plaintiff from offering evidence, testimony, or making any reference before the jury regarding "the legal significance of initial interest confusion and point-of-sale confusion." *Def. Brief* at 2, Dkt. 69-1. Defendant clarifies that it seeks to prevent Plaintiff from arguing "that point-of-sale confusion is of greater importance than initial interest confusion, or that a lack of point-of-sale confusion prevents TimberStone from establishing a likelihood of confusion

under Sleekcraft." *Def. Reply Brief* at 9, Dkt. 86.

The most widely recognized form of consumer confusion under Trademark law is "point-of-sale confusion," which occurs when a customer makes a purchase from one company believing it to be the good or service from another. *See* J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition (4th Ed. 2016) § 23:5. A different variant, "initial interest confusion," occurs where temporary confusion creates consumer interest in a good or service but any confusion is dispelled before an actual purchase is made. *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 946 (9th Cir. 2015), cert. denied, 136 S. Ct. 1231, 194 L. Ed. 2d 185 (2016).

The Ninth Circuit has held that confusion of either variety is actionable under the Lanham Act. *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1176 (9th Cir. 2007). Both are "analyzed pursuant to the Sleekcraft factors for likelihood of confusion." *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004). Thus, Defendant in this case is not required to demonstrate a likelihood of point-of-sale confusion. Plaintiff is precluded from arguing otherwise.

The Court is reluctant to shut the door further. The Court finds the record before it insufficient to prohibit all testimony "about the relative importance of initial interest confusion and point-of-sale confusion." The Court will allow Plaintiff to explore before the jury whether there has been any point-of-sale confusion. The Court also declines to prohibit Plaintiff from presenting argument regarding the sufficiency of Defendant's evidence. Certainly, the greater the overall evidence of consumer confusion, the stronger

Defendant's claim. Moreover, a jury may properly conclude that short-lived initial interest confusion is weaker evidence of actual confusion than more lasting initial interest or point-of-sale confusion. *See, e.g.*, *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002) ("A reasonable juror may . . . find *de minimis* evidence of actual confusion unpersuasive."); *accord Safeway Stores, Inc. v. Safeway Disc. Drugs*, 675 F.2d 1160, 1167 (11th Cir. 1982) ("Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight . . . .").

Defendant's motion as to initial interest confusion is therefore GRANTED IN PART, insofar as it seeks to prevent Plaintiff from arguing that Defendant must demonstrate actual or likely point-of-sale confusion. The motion is DENIED IN PART, without prejudice, insofar as it seeks to prohibit other testimony, or argument, about the presence or absence of "point-of-sale" confusion. Decisions concerning the admissibility of such evidence, if offered, will be made during trial.

## ORDER

**IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motions in Limine (Dkt. 62) is **DENIED IN PART**, without prejudice to a more focused objection at trial, insofar as it seeks to prohibit all evidence regarding settlement offers and negotiations.

2. Defendant's Motion in Limine Regarding Pending or Past Litigation (Dkt. 67) is **GRANTED** as to the Illinois Action, Clerk's Default, and Cancellation Petition.

3. Defendant's Motion in Limine Regarding Geographic Proximity (Dkt. 68) is **DENIED** without prejudice.

4. Defendant's Motion in Limine Regarding Initial Interest Confusion (Dkt. 69) is **GRANTED IN PART**, insofar as it seeks to prevent Plaintiff from arguing that Defendant must demonstrate point-of-sale confusion in this case, and **DENIED IN PART**, without prejudice, insofar as it seeks to prohibit other testimony or argument, about the presence or absence of "point-of-sale" confusion.

DATED: September 21, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court