UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| IDAHO GOLF PARTNERS, INC., | Case No. 1:14-cv-00233-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| TIMBERSTONE MANAGEMENT, LLC., | |
| Defendant. | |

## INTRODUCTION

Pending before the Court are Plaintiff's claims for declaratory relief, Defendant's claims for injunctive relief, and Defendant's Motion to Reconsider the Court's August 17, 2017 Memorandum Decision and Order. (Dkt. 142). For the reasons described below, the Court will deny Defendant's motion to reconsider, and will enter a limited permanent injunction governing Plaintiff's use of the TimberStone mark in Southwestern Idaho

## PROCEDURAL BACKGROUND

On August 17, 2017, the Court entered a Memorandum Decision and Order addressing the parties' post-trial motions in this case. (*Aug. 17, 2017 Order*, Dkt. 137).[1]

---

[1] The Court previously laid out the procedural history of this case in its August 17, 2017 Order, and incorporates that history here by reference.

At that time, it reserved ruling on the parties' requests for equitable relief. *Id*. at 3. The Court found that IGPI was entitled to a new trial on TimberStone Management's trademark dilution claim, on the grounds that there was a clear lack of evidence to establish the necessary "fame" element of the claim. *Id*. at 19. The Court further found that the jury did not apportion its lump-sum damages award between the claims on which it found that TimberStone Management prevailed. *Id.* at 35. Because the Court set aside the jury's verdict on trademark dilution, it held that the issue of damages on both claims must be re-submitted to the jury. *Id.* at 37. The parties subsequently waived their rights to a new trial on these issues. *See Plaintiff's Notice*, Dkt. 139.

The August 17, 2017 Order also disposed of several other post-trial issues. Most relevant to this decision, the Court denied IGPI's motion for a new trial on TimberStone Management's unfair competition and false designation claims after finding that there was no inconsistency in the jury's verdict. *Aug. 17, 2017 Order* at 22, Dkt. 137. The jury found for TimberStone Management on these claims, and IGPI argued that this finding was inconsistent with the jury's finding against TimberStone Management on its federal and common law infringement claims. *Id.* at 20. Drawing all reasonable inferences in favor of TimberStone Management, the Court upheld the verdict. *Id.* at 22. The Court found that to the extent the jury verdict appeared inconsistent, it could be reconciled if the jury had found that IGPI established its affirmative defense of continuous prior use. *Id.*

Finally, the Court noted in its Order that it was inclined to issue only a limited permanent injunction, requiring IGPI to take reasonable steps to avoid any further

confusion. *Id.* at 38. Before doing so, however, the Court directed the parties to meet and confer for the purposes of drafting mutually-agreeable terms for a permanent injunction. *Id.* at 38-29. The Court also allowed the parties to submit proposed findings of fact and conclusions of law on these issues, and directed them to file a proposed injunction. *Id.* at 38.

On September 8, 2017, IGPI filed its proposed findings of fact, conclusions of law, and permanent injunction regarding any continued use of the TimberStone mark by IGPI. *See Proposed Findings of Fact by IGPI*, Dkt. 141. TimberStone Management filed its own proposed findings of fact and conclusions of law that same day, and also filed its Motion for Reconsideration. *See Motion for Reconsideration*, Dkt. 142; *Proposed Findings of Fact by TimberStone Management*, Dkt. 143. On September 15, 2017, TimberStone Management filed its proposed injunction. *See Notice*, Dkt. 144.

The Court will first address TimberStone Management's Motion for Reconsideration, and then will issue its findings of fact and conclusions of law on the issues of declaratory and injunctive relief.

## ANALYSIS

## 1.    Motion for Reconsideration

TimberStone Management asks the Court to reconsider a single line in its August 17, 2017 Order. Specifically, TimberStone Management takes issue with the Court's statement that it is inclined to issue a limited permanent injunction "given the jury's finding that IGPI established its good faith remote use defense." *Aug. 17, 2017 Order* at

38, Dkt. 137. TimberStone Management argues both that the jury did not expressly find that IGPI established its continuous use defense, and that such a finding would be inconsistent with the jury's determination that IGPI acted willfully. *Def.'s Br.* at 4, 7, Dkt. 142-1.

The Federal Rules of Civil Procedure do not expressly authorize a motion for reconsideration, but a "district court has the inherent power to reconsider and modify its interlocutory orders prior to entry of judgment . . . ." *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005) (internal quotations omitted); *cf.* Fed. R. Civ. Pro. 54(b). Nevertheless, reconsideration is "an extraordinary remedy, to be used sparingly. . . ." *Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir. 2003). Absent highly unusual circumstances, a motion for reconsideration will not be granted "unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law." *Kona Enters., Inc v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

In a strange turn of events, TimberStone Management has filed this motion to reconsider on the grounds that the Court clearly erred when it upheld a verdict in TimberStone Management's favor. *Def.'s Br.* at 4, Dkt. 142-1. In the context of reconciling the jury's special verdict responses, this Court held that a reasonable jury could find that IGPI had established its continuous use defense. *Aug. 17, 2017 Order* at 22, Dkt. 137. This finding is sufficient to support the Court's ruling that the verdicts were consistent. *See Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364

(1962) (finding that so long as there is "a view of the case that makes the jury's answers to special interrogatories consistent" the Court must find them consistent.). TimberStone Management disagrees with the Court's finding, though not with its result.[2]

TimberStone Management argues that a finding that IGPI established a continuous use defense would be inconsistent with the jury's finding that IGPI acted maliciously, fraudulently, or willfully. In support of its case, it cites a Ninth Circuit opinion decided almost a year after the jury entered its verdict in this case. *See Special Verdict Form*, Dkt. 117 (entered September 30, 2016) and *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 862 F.3d 1131, 1133 (9th Cir. 2017) (decided July 11, 2017). TimberStone Management cites *Stone Creek* for the proposition that "there can be no 'good faith' remote use defense where a junior user had prior knowledge of a senior user's rights." *Def.'s Br.* at 6, Dkt. 142-1. They argue that the jury's finding that IGPI acted maliciously, fraudulently,

---

[2] To preserve its jury verdict and avoid snatching defeat from the jaws of victory, TimberStone Management suggests that the jury found it failed to establish a prima facie case for federal trademark infringement and common law trademark infringement, but did establish a prima facie case for unfair competition. *Def.'s Br.* at 5, Dkt. 142-1. TimberStone Management provides no rational explanation for how this reading of the jury's verdict resolves, rather than creates, inconsistency. On the federal trademark infringement claim, for example, the jury was instructed to find the validity element to be established, and to presume the ownership element, unless IGPI proved its prior use defense. *Jury Instructions*, at 14-15, Dkt. 116. Thus, absent a finding that IGPI established its prior use defense, the only element remaining for Timberstone Management to establish its prima facie case for federal trademark infringement was likelihood of confusion. *Id.* at 3. In finding for TimberStone Management on unfair competition, however, the jury must have found some likelihood of confusion. *Id.* at 29. This substantially undermines TimberStone Management's argument that the jury's verdict could be reconciled simply because the infringement claims and the unfair competition claims have different elements. Although TimberStone Management points to the lack of a specific instruction on likelihood of confusion for the unfair competition claim, it fails to explain how a finding of likelihood of confusion on that claim would be insufficient to establish the infringement claims.

or willfully requires a finding that IGPI acted with knowledge of TimberStone Management's rights, and that IGPI's knowledge would therefore negate any showing of good faith under *Stone Creek. See, e.g.*, *Def.'s Reply* at 6-7, Dkt.146.

The Court disagrees. At the time the jury answered the special verdict questions, *Stone Creek* had not yet been decided, and there was no rule in this Circuit stating that knowledge of a senior user's rights negates a showing of good faith. The Court's finds that its determination of the consistency of the jury's verdict is governed by the law in place at the time the verdict was issued. A subsequent change in law does not retroactively render a jury's verdict inconsistent, though it may provide grounds for a motion to alter or amend the judgment, based on principles of fairness and justice. *See* Fed. R. Civ. Pro. 59(e); *Kona Enters., Inc*, 229 F.3d at 890. As TimberStone Management notes, there has been no such motion in this case. Because *Stone Creek* was handed down during the pendency of the parties' equitable claims, however, the Court will apply *Stone Creek* in determining the scope of the permanent injunction. *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("once a federal circuit court hands down a decision, the district courts within that district are bound to follow it.").

Further, a finding that IGPI established a prior use defense is not inconsistent with a finding that IGPI acted fraudulently, maliciously, or willfully in relation to TimberStone Management's claim for unfair competition and false designation of origin, under *Stone Creek* or otherwise. Unlike the trademark infringement claims, there is no temporal or ownership element with regards to an unfair competition claim. *See Jury*

*Instructions* at 29, Dkt. 116 ("a person may recover for false designation of origin even though the person is not the owner of the trademark for the word, term, name, symbol, or combination used by another person."). As such, the jury could have found that IGPI established a good faith prior use defense, but that it subsequently became aware of the likelihood of confusion with TimberStone Management, and that its failure to mitigate that confusion was sufficient to give rise to a claim for false designation of origin. In other words, the jury could have found that the claims for false designation, and for acting willfully, maliciously, or fraudulently, arose after IGPI had established its common law rights to use the mark in Southwestern Idaho. Accordingly, the Court will deny TimberStone Management's motion for reconsideration.

**2.    Equitable Relief**

Both parties have requested equitable relief from this Court. IGPI asks the court to declare that it has a common law right "to use the TimberStone mark in Southwest Idaho without infringing upon Defendant's federal registration," and that TimberStone Management does not have the exclusive right to use of the TimberStone mark. IGPI further asks this Court to enjoin Timberstone Management from interfering with IGPI's use of the TimberStone mark. TimberStone Management seeks a permanent injunction prohibiting IGPI from continuing to use the TimberStone mark, on the grounds that it has national exclusive rights to the mark by virtue of its federal trademark. Based on the following findings of fact and conclusions of law, the Court finds that IGPI has established its common law right to use the TimberStone mark in remote Southwestern

Idaho, and that the scope of protection afforded TimberStone Management by virtue of its federal trademark does not extend to Southwestern Idaho. The Court further finds that TimberStone Management is entitled to limited injunctive relief to prevent any further violation of 15 U.S.C. § 1125.

### (1)    Findings of Fact

The TimberStone Golf Course in Iron Mountain, Michigan has been in operation since 1996. On September 22, 2010, Plaintiff Idaho Golf Partners, Inc. was formed for the purpose of opening a golf course in Canyon County, Idaho. IGPI chose the name TimberStone for its golf course, and there is no evidence that IGPI was aware of TimberStone Management's TimberStone golf course at the time the name was chosen.

On February 15, 2011, IGPI assumed the business name "TimberStone Golf Course" by registering with the Idaho Secretary of State, and began using the TimberStone mark. Sometime that spring, Kelly Christensen, the director of marketing for IGPI, found the URL www.timberstonegolfcourse.com while searching for a URL for the Idaho golf course.[3] In June 2011, IGPI established its first Facebook page for TimberStone Golf Course, and on July 1, 2011, IGPI opened TimberStone Golf Course in

---

[3] IGPI's discovery that there was another golf course using the name "TimberStone" in another region of the country did not, by itself, put IGPI on notice that another company had obtained rights which barred the use of the TimberStone name for a local golf course operated in Southwestern Idaho. The testimony at trial made clear there are number of golf course names which are used simultaneously by many, even dozens, of unrelated golf courses around the United States.

Caldwell, Idaho. IGPI has maintained continuous use of the name TimberStone Golf Course since February 2011.

TimberStone Management filed its registration for the trademark TIMBERSTONE in connection with golf courses with the United States Patent and Trademark Office on January 12, 2012. On April 4, 2012, TimberStone Management sent a cease and desist letter to IGPI demanding that IGPI stop using the name TimberStone in connection with its golf course. On June 11, 2013, TimberStone management was granted the trademark TIMBERSTONE in connection with golf courses, and on August 2, 2013 TimberStone Management sent a copy of its federal Certificate of Registration for TIMBERSTONE to IGPI. At some point after TimberStone Management obtained the Certificate of Registration, it contacted Facebook and alleged that IGPI had infringed upon its trademark. As a result, IGPI's TimberStone Facebook page was disabled.

Both parties sell rounds of golf, golf-related services, and merchandise, and both parties rely heavily on social media and other online marketing to promote their courses. TimberStone Management's target market and most of its customers are in Michigan and the surrounding states. There is no evidence of TimberStone Management advertising, promoting, or marketing its golf course in Idaho, or seeking customers from Idaho. Indeed, TimberStone Management admitted that it did not advertise in the State of Idaho. Similarly, there is no evidence that IGPI advertises in the State of Michigan or surrounding states, or seeks customers in that region.

Despite their regionally specific marketing schemes, both parties testified to instances of receiving calls from people trying to reach the other course. TimberStone Management also testified to golfers mistakenly booking tee times with IGPI's course, and posting about the Idaho course on the Michigan course Facebook page. There is no evidence, however, that customers of either course purchased rounds of golf at the wrong course.

On July 14, 2014, IGPI filed the instant action seeking declaratory relief under the Lanham Act as to its rights to use the TimberStone mark in Southwestern Idaho. TimberStone Management answered the complaint on March 31, 2015 and counterclaimed for federal and common law trademark infringement, unfair competition and false designation of origin, trademark dilution, and cybersquatting. On September 30, 2016, the jury returned its special verdict form. The jury found in favor of TimberStone Management on its claim for unfair competition and false designation of origin, and its claim for trademark dilution. The jury further found that IGPI had acted with fraud, malice, and willfulness in using the TimberStone mark. Finally, the jury found that TimberStone had not established its claims for federal or common law trademark infringement, or for cybersquatting. On August 17, 2017, the Court set aside the jury's verdict in favor of TimberStone Management on its trademark dilution claim, finding that it went against the clear weight of the evidence.

### (2)    Conclusions of Law

#### A.  *Legal Standards*

The Court has jurisdiction over this action pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2201 and the Lanham Act, 15 U.S.C. § 1051 et seq. The Court has the power to "declare the rights and other legal relations of any interested party seeking such declaration" in a case of actual controversy. 28 U.S.C. § 2201. The Court further "has the power to grant injunctions, according to the principles of equity, and upon such terms as the court may deem reasonable" to remedy damages caused by unfair competition and false designation of origin in connection with goods or services used in commerce. 15 U.S.C. §§ 1116(a), 1125(a).

A party seeking a permanent injunction has the burden of establishing "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

#### B.  *Common Law Trademark Rights*

Federal registration of a trademark "presumptively entitles the senior user [of the trademark] to nationwide protection" *Stone Creek*, 875 F.3d 430, 436 (9th Cir. 2017). Common-law trademark rights, on the other hand, "extend only to the territory where a mark is known and recognized." *Id.* As such, "a later user may sometimes acquire rights

in pockets geographically remote from the first user's territory." *Id.* Such rights are not "wiped out merely because [the senior user] later filed a federal registration." *Id.* Instead, "the geographic scope of a senior user's rights in a registered trademark . . . stretches throughout the United States with holes cut out where others acquired common-law rights prior to the registration." *Id.* To take advantage of common-law rights, "a junior user must establish good faith use in a geographically remote area." *Id.* "There is no good faith if the junior user had knowledge of the senior user's prior use."

## C. *Analysis*

The Court finds that the holding in *Stone Creek* does not preclude a finding that IGPI established a common law right to use the TimberStone mark in Southwestern Idaho. In *Stone Creek*, the plaintiff obtained an Arizona state trademark in 1992, and federally registered its mark in 2012. *Stone Creek*, 875 F.3d at 430. The plaintiff operated showrooms in Arizona, from which it sold its furniture. *Id.* But, the plaintiff also marketed and sold furniture in other parts of the country via its website and through advertising in national magazines. *Id.* at 430, 434. In 2003, the plaintiff contracted with the defendant in the case to produce furniture sold under the mark at issue. *Id.* at 430. In 2008, the defendant began selling furniture with the same mark to another company, which sold the furniture out of stores in the Midwest. *Id.* In 2013, the plaintiff began to hear from people that had bought goods under the mark from the stores in the Midwest. *Id.* at 430-31. The plaintiff then filed suit alleging federal and common law trademark infringement. *Id.* at 431. The court held that the defendant's knowledge of plaintiff's use

of the mark precluded them from establishing good faith use in a geographically remote area. *Id.* at 437, 438 ("there is no good faith if the junior user had knowledge of the senior user's prior use.").

The Court finds that there are two critical issues underpinning the Ninth Circuit's decision in *Stone Creek*. First, there was sufficient evidence to establish that the plaintiff had common law right to use the mark in the geographic area at issue. As the Ninth Circuit notes "common-law trademark rights extend only to the territory where a mark is known and recognized, so a later user may sometimes acquire rights in pockets geographically remote from the first user's territory." *Id.* at 436. In *Stone Creek*, the Circuit Court found that the plaintiff marketed and advertised its goods in the Midwest before and during the time that the defendant began to sell the same or similar goods to other stores in that area under the same mark. *Id.* at 434 (finding that the plaintiff began advertising its goods nationwide as early as 2000, that its marketing and sales reached the Midwest, and that the plaintiff and the third-party stores were simultaneously selling goods under the mark in the Midwest). Thus, the court held that the plaintiff's "right to enforce its mark in the alleged infringer's area [had] ripened into a remedy." *Id.*

Second, there was overwhelming evidence that the defendant in *Stone Creek* had actual, "affirmative" knowledge of the plaintiff's senior use of the mark, and that the defendant had not "serendipitously chosen the same mark and built up its own brand." *Id.* at 439. The court recognized that the purpose of the good faith prior use doctrine is to prevent a senior user from moving into a new market and benefitting from the trade and

good will built up by a junior user who independently employs the same mark. *Id.* at 437

(citing *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 420 (1919). In that case,

however, the defendant had produced goods under the mark at issue for the plaintiff for

five years, and then subsequently contracted with and produced goods for a second seller

under the same mark, using the same logo and marketing materials. *Id.* at 430. Thus, the

Circuit Court found that the defendant "affirmatively" knew that its use of the mark came

"directly at the expense of the senior user, potentially blocking the senior user from

entering into the new market," in violation of the plaintiff's rights. *Id.* at 439. In other

situations, however, the Ninth Circuit has held that simply establishing knowledge of

another person's **use** of a mark is not sufficient to establish knowledge of that person's

**rights** to the mark. *See Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir.

2006) (finding that a person lacks knowledge of another user's rights to a mark where the

person does not know or believe the other user's rights to be superior).

Taking into consideration these factors, the Court finds that IGPI would be

precluded from establishing its common law rights to use the TimberStone mark in

Southwestern Idaho under *Stone Creek* if (1) TimberStone Management had established

its common law right to use the TimberStone mark in Southwestern Idaho at the time

IGPI began using the mark; or (2) IGPI affirmatively knew of TimberStone

Management's rights to the mark, such that IGPI knew its use of the mark "came directly

at the expense" of TimberStone Management.

The Court finds that there is no evidence that TimberStone Management established a common law right to use the mark in the remote geographic area of Southwestern Idaho. There is no evidence that TimberStone Management has ever used the TimberStone mark in Southwestern Idaho, that it was known and recognized by potential customers in Southwestern Idaho, or that it has ever had any actual sales or non-sales activity in Southwestern Idaho. The only support Timberstone Management offers for its pre-registration rights are that it had registered a domain name and established a webpage that could be found by someone in Southwestern Idaho through a google search. The Court finds that this is not sufficient to establish common law rights to use the mark in a particular region.[4]

The Court further finds that there is insufficient evidence to establish that IGPI affirmatively knew of TimberStone Management's rights to the mark, such that IGPI knew its use of the mark "came directly at the expense" of TimberStone Management. At most, the evidence shows that after independently deciding to operate a golf course using the name TimberStone, and registering that business name with the state of Idaho, IGPI became aware that another golf course hundreds of miles distant was using the same name.

_____

[4] This holding is consistent with the Ninth Circuit's decision in *Stone Creek*. There, the plaintiff only operated brick and mortar stores in Arizona. *Stone Creek*, 875 F.3d at 434. The district court held that the plaintiff had established common law rights in the Midwest, however, not simply because the plaintiff had established a website that predated the defendant's use of the mark, but also because the plaintiff had customers in the Midwest who actually purchased its goods, either through the website or on account of national advertising that reached the area. *Id.*

The Court finds it more likely than not that IGPI serendipitously chose to use the name TimberStone to build a brand for its golf course in Southwestern Idaho. The Court finds that IGPI did not affirmatively know TimberStone Management had rights to the mark, or that IGPI's use of the mark came at the direct expense of TimberStone Management.[5] The Court further finds that TimberStone Management did not have a common law right to use the TimberStone mark in Southwestern Idaho, and that IGPI began to use the mark in good faith, without knowledge of any user with superior rights in that geographic region. As such, the Court finds that IGPI has established its exclusive right to use the TimberStone mark in Southwestern Idaho, because it was the first to use the term TimberStone in connection with a golf course in that region.

The Court finds, however, that TimberStone Management is entitled to a limited permanent injunction governing IGPI's use of the mark as a remedy for its claim of unfair competition and false designation of origin. The jury found that IGPI's use of the name TimberStone was likely to cause confusion, and that TimberStone Management has been or is likely to be damaged by that confusion. The judgment for damages already awarded to TimberStone Management does not provide a complete remedy for any ongoing confusion. To the extent ongoing confusion creates a hardship for TimberStone

---

[5] As discussed above, simply knowing that the TimberStone name was used by a golf course in northern Michigan is not the same as knowing that the user held rights which would preclude the use of the name TimberStone by other golf courses, whether in Southwestern Idaho or other parts of the United States. *See infra,* note 3.

Management, it outweighs any hardship for IGPI in taking reasonable steps to mitigate such confusion. Finally, the public interest is served by mitigating any ongoing confusion. Thus, a limited permanent injunction is justified, to the extent it remedies the potential harm from such ongoing confusion.

The court will issue a separate decision on TimberStone Management's motion for attorney's fees.

Accordingly,

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1.      Defendant's Motion for Reconsideration (Dkt.142) is **DENIED**.

2.      Plaintiff's Request for Declaratory Judgment is **GRANTED**.

3.      Defendant's Request for Permanent Injunction is **GRANTED IN PART** and **DENIED IN PART.**

4.      The Court will file a separate Judgment laying out the terms of the permanent injunction.

DATED: March 27, 2018

B. Lynn Winmill
Chief U.S. District Court Judge